UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

MARY J.[1],

    Plaintiff,

v.                                 Case No. 4:18-cv-27

ANDREW M. SAUL, Commissioner
of Social Security Administration,

    Defendant.

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Mary J., on April 27, 2018. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Mary J., filed applications for Disability Insurance Benefits and Supplemental Security Income on February 4, 2014, alleging a disability onset date of September 14, 2012. (Tr. 11). The Disability Determination Bureau denied Mary J.'s applications initially on June 16, 2014, and again upon reconsideration on September 15, 2014. (Tr. 11). Mary J. subsequently filed a timely request for a hearing on September 23, 2014. (Tr. 11). A video hearing was held on January 20, 2017, before Administrative Law Judge (ALJ) Kathleen Kadlec, and the ALJ issued an unfavorable decision on May 16, 2017. (Tr. 11-24). Vocational Expert (VE) Pamela Tucker appeared and testified at the hearing. (Tr. 11). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

Mary J. met the insured status requirements of the Social Security Act through June 30, 2017. (Tr. 13). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Mary J. had not engaged in substantial gainful activity since September 14, 2012, her alleged onset date. (Tr. 13).

At step two, the ALJ determined that Mary J. had the following severe impairments: obesity, degenerative disc disease, carpal tunnel syndrome, depression, anxiety, and bipolar disorder. (Tr. 14). The ALJ indicated that Mary J.'s severe impairments significantly limited her ability to perform basic work activities. (Tr. 14).

At step three, the ALJ concluded that Mary J. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14). Specifically, the ALJ determined that Mary J.'s impairments did not meet listings 1.04 and 11.14. (Tr. 14). The ALJ also considered Mary J.'s obesity, singly and in combination with her other impairments, and determined that although worsened by her obesity her impairments still were not of listing level severity. (Tr. 14).

Next, the ALJ considered Mary J.'s mental impairments, singly and in combination, against the criteria listed in listings 12.04 and 12.06. (Tr. 15). In making this finding, the ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.

(Tr. 15). The ALJ indicated that a marked limitation means the ability to function independently, appropriately, effectively, and on a sustained basis is seriously limited, while an extreme

limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 15).

The ALJ determined that Mary J. had moderate limitations in understanding, remembering, or applying information; no limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and no limitations in adapting or managing herself. (Tr. 15). Because Mary J.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the paragraph B criteria was not satisfied. (Tr. 15). Additionally, the ALJ determined that Mary J. did not satisfy the paragraph C criteria. (Tr. 15). The ALJ also noted that no State agency psychological consultant concluded that a mental listing was medically equaled. (Tr. 15).

After consideration of the entire record, the ALJ then assessed Mary J.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no operation of hand controls; frequent overhead reaching bilaterally; frequent reaching in other directions bilaterally; frequent handling, fingering, and feeling bilaterally; occasionally climbing ramps and stairs, balancing, stooping, crouching, and crawling; no ladders, ropes, or scaffolds; no work at unprotected heights or moving mechanical parts; no operation of commercial motor vehicle; no exposure to extreme cold; and no outside work. Further, the claimant is limited to simple routine work procedures, simple work-related judgments, and changes commensurate with unskilled work.

(Tr. 16). The ALJ explained that in considering Mary J.'s symptoms she followed a two-step process. (Tr. 16). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Mary J.'s pain or other

symptoms. (Tr. 16). Then, she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Mary J.'s functioning. (Tr. 16).

The ALJ considered Mary J.'s testimony at the hearing about the degree and severity of her alleged impairments. (Tr. 16-17). However, she found that Mary J.'s medically determinable impairments reasonably could have been expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence. (Tr. 17). In making this determination, the ALJ considered the objective medical evidence, as well as Mary J.'s lack of treatment and daily living activities. (Tr. 21). The ALJ concluded that the evidence was inconsistent with a totally disabled individual. (Tr. 21).

At step four, the ALJ determined that Mary J. was unable to perform any past relevant work. (Tr. 22). Considering Mary J.'s age, education, work experience, and RFC, the ALJ determined that there were jobs in the national economy that she could perform, including office helper (35,000 jobs nationally), mail clerk (35,000 jobs nationally), and inspector and hand packager (28,000 jobs nationally). (Tr. 23). The ALJ found that Mary J. had not been under a disability, as defined in the Social Security Act, from September 14, 2012 through the date of this decision, May 16, 2017. (Tr. 24).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097

4

(7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610,

5

613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**; *see Biestek v. Berryhill,* 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying his opinion regarding job availability, does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Mary J. has requested that the court reverse the ALJ's decision and award benefits, or in the alternative, remand this matter for additional proceedings. In her appeal, Mary J. has argued that: (1) the ALJ failed to adequately account for her moderate limitations in concentration, persistence, or pace in the RFC; and (2) the VE's testimony was flawed.

Mary J. has argued that the ALJ failed to account for her moderate limitations in concentration, persistence, or pace. In the RFC, the ALJ limited Mary J. to "simple routine work procedures, simple work-related judgments, and changes commensurate with unskilled work."

6

(Tr. 16). She contends that the ALJ's blanket statement was not sufficient because it failed to adequately capture her documented difficulties with concentrating, persisting, or maintaining pace. The Seventh Circuit has rejected the notion that confining a claimant to simple, routine tasks adequately captures the limitations of one who has deficiencies in concentration, persistence, or pace. *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014); *Moreno v. Berryhill,* 882 F.3d 722, 730 (7th Cir. 2018). Whether simple, routine tasks can be learned is "unrelated to the question of whether an individual with mental impairments – *e.g.*, with difficulties maintaining concentration, persistence, or pace – can perform such work." *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015).

Furthermore, Mary J. has argued that the ALJ did not pose a hypothetical question to the VE that adequately accounted for her deficiencies in concentration, persistence, or pace. Therefore, the VE was unable to appropriately assess what jobs she could perform. The ALJ's RFC assessment and the hypothetical posed to the VE must incorporate all of the claimant's limitations supported by the medical record. *Yurt,* 758 F.3d at 857 (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)); *Indoranto v. Barnhart*, 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."). That includes any deficiencies the claimant has in concentration, persistence, or pace. *Yurt*, 758 F.3d at 857; *O'Connor-Spinner*, 627 F.3d at 619 ("Among the limitations the VE must consider are deficiencies of concentration, persistence and pace."); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (indicating the hypothetical question "must account for documented limitations of 'concentration, persistence, or pace'") (collecting cases). The most

effective way to ensure that the VE is fully apprised of the claimant's limitations is to include them directly in the hypothetical. ***O'Connor-Spinner***, 627 F.3d at 619.

However, ALJs do not need to explicitly state "concentration, persistence, or pace" in the hypothetical for all cases. ***Yurt***, 758 F.3d at 857; ***O'Connor-Spinner***, 627 F.3d at 619. Rather, a court may assume a VE's familiarity with a claimant's limitations, despite deficiencies in the hypothetical, when the VE independently reviewed the medical record or heard testimony directly addressing those limitations. ***O'Connor-Spinner***, 627 F.3d at 619; ***Simila v. Astrue***, 573 F.3d 503, 521 (7th Cir. 2009). This exception does not apply if the ALJ poses a series of increasingly restrictive hypotheticals because courts infer that the VE's attention is focused on the hypotheticals and not the record. ***O'Connor-Spinner***, 627 F.3d at 619; ***Young v. Barnhart***, 362 F.3d 995, 1003 (7th Cir. 2004). The ALJ posed a series of increasingly restrictive hypotheticals. (Tr. 47-48). Moreover, the VE testified that she had read and listened to Mary J.'s testimony regarding her work history. (Tr. 46). There is nothing in the record that indicated that the VE independently reviewed Mary J.'s medical record or heard testimony directly addressing her moderate limitations in concentrating, persisting, or maintaining pace. Therefore, this exception does not apply.

Next, an ALJ's hypothetical may omit "concentration, persistence, or pace" when it is clear that the ALJ's phrasing specifically excluded tasks that someone with the claimant's limitations could not perform. ***O'Connor-Spinner***, 627 F.3d at 619. For example, courts have upheld hypotheticals that restricted a claimant to low-stress work when the limitations were stress or panic related. *See* ***Johansen v. Barnhart***, 314 F.3d 283, 285, 288–89 (7th Cir. 2002) (upholding a hypothetical formulated in terms of "repetitive, low-stress" work because the description eliminated positions likely to trigger symptoms of the panic disorder that originated

the claimant's moderate limitations in concentration, persistence, or pace); *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007) (upholding a hypothetical that restricted the claimant to low-stress, low-production work when stress-induced headaches, frustration, and anger caused the claimant's difficulties in concentration, persistence, or pace). The ALJ did not use alternative phrasing to specifically exclude tasks that someone with Mary J.'s limitations would be unable to perform. Therefore, this exception does not apply.

Courts may uphold a hypothetical that does not mention "concentration, persistence, or pace" when the underlying conditions were mentioned and the link between the underlying condition and the concentration difficulties was apparent enough to incorporate those difficulties by reference. *See Simila*, 573 F.3d at 521–22 (upholding the hypothetical but indicating the failure to include the specific limitations was "troubling"). Generally, terms like "simple, repetitive tasks" alone do not exclude from the VE's consideration those positions that present significant problems with concentration, persistence, or pace. *Stewart*, 561 F.3d at 684–85 (finding hypothetical limited to simple, routine tasks did not account for limitations of concentration, persistence, or pace); *see Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003) (posing hypothetical as individual of borderline intelligence did not account for limitations of concentration). The ALJ did not mention Mary J.'s underlying conditions. Therefore, this exception does not apply.

The ALJ has not satisfied any of the exceptions the Seventh Circuit has allowed where there were gaps in the hypothetical questions posed to the VE regarding concentration, persistence, or pace. Moreover, the ALJ failed to ask the VE a hypothetical question that limited Mary J. to frequent handling, fingering, and feeling. The Commissioner contends that the ALJ's oversight was harmless because the jobs cited by the VE were consistent with Mary J.'s

limitations.  However, the court cannot say that the ALJ's omissions were harmless because the VE depended on the ALJ to frame Mary J.'s limitations in order to supply the work that could be performed.

As a result, the VE's assessment of the jobs available to Mary J. is called into doubt, as is the ALJ's conclusion that she was not disabled under the Social Security Act.  *See* **Moreno v. Berryhill,** 882 F.3d 722, 730 (7th Cir. 2018) (remanding where the question posed to the VE did not address limitations in concentration, persistence, and pace).  There was nothing in the record that demonstrated that the VE independently knew the extent of Mary J.'s limitations. Therefore, it cannot be ascertained whether the VE's testimony represents substantial evidence, and remand is required.  *See* **O'Connor–Spinner,** 627 F.3d at 620–21 (remanding where the hypothetical did not fully address the limitations of the claimant and thus could not "assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do").

Mary J. has requested that the court remand for an award of benefits.  An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits."  **Allord v. Astrue**, 631 F.3d 411, 415 (7th Cir. 2011).  The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits.  **Briscoe v. Barnhart**, 425 F.3d 345, 355 (7th Cir. 2005).  The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 22nd day of August, 2019.

                                                                   /s/ Andrew P. Rodovich
                                                                   United States Magistrate Judge